## Hurley v. Commonwealth.

(Decided January 17, 1919.)

### Appeal from Laurel Circuit Court.

1. **Homicide—Self Defense—Suspension—Instructions.—**On a trial for homicide, evidence examined and held sufficient to sustain a clause in the self defense instruction, qualifying the right of self defense.

2. Criminal Law—Continuance—Postponement—Absent Witness— Error.—It was not error to refuse to pass a case to enable an absent witness to testify to a discrepancy between the evidence of two witnesses on the trial and their evidence on the examining trial, where the discrepancy was testified to by three other witnesses, and the discrepancy was so slight as not to amount to a material contradiction.

HAZELWOOD & JOHNSON for appellant.

CHARLES H. MORRIS, Attorney General, and D. M. HOWERTON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Robert Hurley was convicted of murder and given a life sentence in the penitentiary. He appeals.

Some time prior to the homicide, an execution for cost in a case in which judgment had been rendered against defendant was placed in the hands of Robert Eversole, a deputy sheriff of Laurel county. On the morning of December 29, 1916, Eversole went to the homes of Grant Johnson and W. A. Sears and deputized them to go with him to assist him in collecting the execution, or in levying the same upon the property of the defendant.

They reached the home of the defendant about nine o'clock. Upon their arrival the defendant invited them into his home, but the officer and his assistants declined to go in. Eversole then told the defendant that he had an execution for the costs in the hog case and wanted to know what defendant was going to do about it. Defend-

ant informed him that he did not have the money and that he had been "hounded" about that hog case as much as he was going to be. Eversole then told him that he would have to levy upon his property. Defendant replied that there was nothing for Eversole to levy upon except defendant himself. However, defendant says that Eversole did not speak of levying the execution, and that he told Eversole that he would try to go to London and see if he could not get the money to pay it. After this conversation, Eversole, Johnson and Sears left defendant's house and went toward defendant's mill, for the purpose of levying upon it. Johnson was left behind to advise defendant not to follow them and stopped on the way toward the mill, but out of sight of defendant's residence. Eversole and Sears went to the mill, and after opening the boiler door, began to look around for some boards on which to tack the notice of the levy. Sears then went to a neighbor's house nearby to procure hammer and tacks. Eversole remained at the mill. While they were in these positions, Johnson observed the defendant approaching with a gun. Upon coming near Johnson, defendant said: "What are you doing here?" Johnson said, "Nothing." Defendant then ordered Johnson to keep his hands out of his pockets and get out of his possessions. The defendant then marched Johnson down the bank and through the gate into the county road. When Johnson had reached the road, Eversole saw the defendant on the bank above the mill with his gun. At this point the evidence is contradictory. According to Sears and Johnson, the defendant, as he approached the mill, commanded Eversole to leave his possessions. Eversole stepped up in the direction of defendant, with his gloves on and without any weapons in his hands, and asked defendant not to do that. The defendant then backed up the hill so as to be above the gate. His father was near the line between him and Eversole, and he told his father two or three times to get out of his way. After his father had stepped aside, defendant fired one shot and killed Eversole. At that time Eversole's pistol was in his pocket and he made no attempt to shoot the defendant. However, according to the evidence of the defendant and three or four other witnesses, Eversole was advancing toward him with his pistol in his hand in a threatening manner, and just as he was getting ready to shoot the defendant, defendant fired the fatal shot. After the shot was fired, the de-

ceased was carried to a neighbor's house, where he died in about thirty minutes. Defendant then left his home and went to Jackson county, where he remained four or five weeks under an assumed name before he was arrested. He says, however, that he did this because the Eversoles were very numerous and he was afraid of them.

The greater portion of the brief of counsel for the defendant is taken up with a discussion of alleged verbal inaccuracies in those instructions dealing with the right of the deceased to summon Johnson and Sears to assist him in making the levy. While, on the whole, we conclude that these instructions were correct, we do not see how any technical error in them could have been prejudicial to the defendant, in view of the fact that the case turned on what actually took place between the defendant and Eversole at the time of the shooting. The real issue was whether the defendant wilfully and feloniously shot and killed the deceased, or the homicide was justifiable on the ground of self defense.

The instructions on this phase of the case are in the usual form and are criticised solely on the ground that the court erred in qualifying the self defense instruction by adding the following:

"Unless you shall further believe from the evidence, beyond a reasonable doubt, that the defendant first wilfully and feloniously began a difficulty with the deceased, and assaulted him with a deadly weapon with intent to kill him, when it was not necessary, and when defendant had no reasonable grounds to believe it necessary to protect himself from immediate danger of death or great bodily harm, or which reasonably appeared to him about to be inflicted upon him by said Eversole, and that the defendant thereby brought on such danger to himself, if you believe from the evidence any such danger existed, then in that event, the jury should not acquit the defendant on the grounds of self defense or apparent necessity."

Of course, if the clause qualifying the self defense instruction had not been sustained by the evidence, it should not have been given. Barker v. Commonwealth, 159 Ky. 304, 166 S. W. 981. But if the evidence for the Commonwealth be true, the defendant first brought on the difficulty by assaulting the deceased with a deadly weapon, when he was in no real or apparent danger.

Hence the evidence was sufficient to authorize the qualifying clause. Harris v. Commonwealth, 140 Ky. 41, 130 S. W. 801.

It is next insisted that the court erred in not passing the case until the return of the sheriff, W. H. Steele, who had been sent to Harlan county. It appears that the witnesses, Johnson and Sears, testified in the circuit court that the defendant said to his father at the time of the killing, ''Pap, by God, get out of the way,'' Defendant's counsel avowed that if the sheriff were present he would testify that these two witnesses stated, on the examining trial, that the defendant said to his father, ''Get out of the way, Pap, get out of the way, get out of the way.'' Not only was this discrepancy in the testimony of Johnson and Sears testified to by the county judge and two deputy sheriffs, but it is apparent that the difference between the two statements is so slight as not to amount to a material contradiction. That being true, the refusal of the court to pass the case can not be regarded as prejudicial error.

Upon the whole, we find no error in the record entitling the defendant to a reversal of the judgment.

Judgment affirmed.